Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
JENNIFER PETERS

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JENNIFER J. PETERS,<br><br>                              Plaintiff,<br><br>v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity, and DOES 1 THROUGH 50, Inclusive,<br><br>                              Defendants | Case No.:<br><br>**COMPLAINT FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff JENNIFER J. PETERS hereby alleges as follows:

## PARTIES

1.      Plaintiff is a former employee of Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU").  Plaintiff worked for OHSU for approximately 11 years, from December 19, 2011 until December 2, 2021, minus a two-month layoff from June 1, 2015 through August 10, 2015.

2.      Plaintiff is also, and at all times relevant herein was, a practicing Christian and thus a member of a class of employees protected under Title VII of

the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a) and (5)(a), Plaintiff sought from Defendant OHSU a religious exception from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").

3.     Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

4.     OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee (the "VERC") – which at all times relevant herein was responsible for reviewing and granting or denying employees' requests for religious exceptions from the Vaccine Mandate – openly expressed hostility toward certain religious views of employees who sought religious exemptions from the COVID-19 vaccination requirement, including those of Plaintiff, declaring that those beliefs were unworthy of a religious exception.

5.     The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged.  The DOES include the members of the VERC, who are, and at all times relevant here in were, directly responsible for denying Plaintiff a religious exemption in violation of her constitutional rights.  Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

6.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

7.    This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the constitution and laws of the United States.

8.    This Court may award the requested damages pursuant to 28 U.S.C. § 1343 and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

9.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

10.    Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents, employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

11.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

12.    OHSU is Oregon's only public medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions.

13.    In August 2021, roughly 18 months after COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order

from Oregon's then-governor, Katherine "Kate" Brown ("Gov. Brown"), enacted the Vaccine Mandate, which generally required all healthcare workers employed in Oregon to be vaccinated against COVID-19 by October 18, 2021. *See* Or. Admin. R. 333-019-1010. However, the Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who employed them to grant, religious exemptions from the vaccination requirement. *Id.*, subsections (3)-(4).

14.    The Vaccine Mandate – which the OHA has since repealed[1] – also declared that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***<u>unable</u>*** to be vaccinated due to … a sincerely held religious belief." Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

15.    In accordance with the OHA's Mandate, OHSU required all of its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021. However, OHSU flat-out warned Plaintiff and other employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved." *See* Attached **Exhibit "A"** [an e-mail from OHSU in which OHSU declares, "Narrow exceptions process will help keep OHSU and the community safe"].

16.    Plaintiff worked as a member of OHSU's administrative team from December 19, 2011 through December 2, 2021, minus two months in which she was laid off from June 1, 2015 through August 10, 2015.

17.    After Gov. Brown declared a state of emergency in Oregon in response to COVID-19's arrival in March 2020, Plaintiff began working entirely remotely. She did so for the remainder of her tenure at OHSU.

---

[1] The OHA repealed the Vaccine Mandate in its entirety on June 30, 2023. *See* http://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/9549761 (last viewed on Oct. 18, 2023).

18.    Plaintiff was qualified to serve in her position and was an exemplary employee throughout her tenure at OHSU.

19.    Plaintiff is also, and at all times relevant herein was, a practicing Christian.  *See* **Exhibit "B"** [a true and accurate copy of Plaintiff's religious exemption request].

20.    Based on prayerful consideration and Bible study, Plaintiff determined that she was unable, in accordance with Christian principles, to take a COVID-19 vaccine.  Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), on or about September 6, 3021, Plaintiff submitted a religious exception request to OHSU.  *See* Ex. "B."  Plaintiff timely submitted her request two weeks before OHSU's imposed deadline of September 20, 2021.

21.    In her religious exception request, Plaintiff provided multiple reasons why her faith prohibited her from taking a COVID-19 vaccine, including the following [*see* Ex. "B"]:

    a.  Her body is a "temple of the Holy Spirit" that she must not defile via the injection of substances that do not occur naturally in the human body or in the foods people consume;

    b.  She trusts in the power of Jesus Christ to protect and heal her body from disease, and "acceptance of vaccines on a healthy body" would constitute a "betrayal of faith," in her view; and

    c.  The OHA's Vaccine Mandate is a precursor to the "mark of the beast."  According to the Bible's Book of Revelation, there will come a time when an emissary of Satan forces all people on Earth to receive a mark containing the number 666 on their foreheads or their right hands.  Anyone who does not receive such a mark, according to Revelation 13:15-17, will be prohibited from buying or selling goods and services.  Given that venues here in Oregon

and elsewhere have required proof of vaccination against COVID-19 as a means of access to goods or services, Plaintiff believes the OHA's Vaccination Mandate is a trial run for the scenario contemplated in the biblical passage cited *supra*.

22.    Plaintiff provided extensive citations to Scripture in support of her asserted beliefs.  *See* Ex. "B."

23.    On October 1, 2021, OHSU notified Plaintiff via e-mail that the VERC had rejected her religious exception request.  A copy of OHSU's notice of rejection is attached hereto as **Exhibit "C."**

24.    In denying Plaintiff's religious exception request, the VERC made no assertion that OHSU could not accommodate her sincerely held religious beliefs due to undue hardship.  *See* Ex. "C."  Rather, the VERC deemed several religious beliefs to be unworthy of accommodation.

25.    Among those beliefs was "[a]n objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is 'unclean.'"  *See* Ex. "C."  Plaintiff held such a religious objection.  *See* Ex. "B."

26.    The VERC's rejection e-mail also stated in boldfaced letters, "OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member."  *See* Ex. "C."  This statement, at best, ignores or demonstrates an extreme lack of sensitivity toward the religious convictions that moved Plaintiff to seek a religious exception in the first place – convictions that no true religious adherent, including Plaintiff, could abandon, even if it meant keeping her job.  At worst, the statement demonstrates hostility toward beliefs like Plaintiff's by pressuring them to choose between their sincerely held religious convictions and the promise of steady employment – a choice that both Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make.

27.     OHSU not only did not engage in a good-faith, interactive exploration of potential accommodations that would have allowed Plaintiff to continue working despite not having received a COVID-19 vaccine, as Title VII requires, OHSU would not even consider engaging in such an interactive exploration.

28.     OHSU could easily have accommodated Plaintiff by allowing her to continue working remotely, as she had done for approximately 18 months prior to her placement on unpaid leave on or about October 18, 2021.  By working remotely, Plaintiff would have posed no danger to OHSU's other employees or patients due to being unvaccinated.

29.     Adding insult to Plaintiff's injury was that OHSU did, in fact, grant religious exceptions to other employees.  *See* Attached **Exhibit "D"** [a true and accurate copy of a document OHSU stating what accommodations were available to the employees to whom OHSU granted religious exceptions].  The fact that OHSU granted religious accommodations to at least some of its employees – i.e., those who had the "right" beliefs – is further proof of the availability of reasonable accommodations that would have enabled Plaintiff to keep working.

30.     Because Plaintiff would not abandon her religious beliefs to remain employed, OHSU placed Plaintiff on unpaid leave on October 19, 2021, before ultimately firing her on or about December 2, 2021.  True and accurate copies of Plaintiff's unpaid leave and termination letters are attached hereto as **Exhibit "E."**

31.     As of this writing, Plaintiff is employed and has thus mintigated her damages.  Even so, Plaintiff has also suffered the following economic damages:

     a.  More than $45,000 in lost wages;

     b.  More than $15,000 in lost retirement benefits;

     c.  Approximately $300 in medical expenses;

     d.  Nearly $14,000 in paid time off earned prior to her firing, plus an additional $8,000 in interest owed pursuant to ORS 82.010; and

e. Roughly $15,000 in paid time off that she would have earned but for her firing.

32.     Plaintiff has also suffered noneconomic damages in the form of anxiety, loss of sleep, emotional distress, and loss of friends.

33.     As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from the Equal Employment Opportunity Commission.  A true and correct copy of that letter is attached hereto as **Exhibit "F."**

34.     Attached hereto as **Exhibit "G"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in Plaintiff's right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that she has timely filed this lawsuit.

<u>**FIRST CAUSE OF ACTION:**</u>
**Violation of Title VII – Failure to Accomodate**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

35.     Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

36.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

37.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

38.     Defendant OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

39.     The term "religion," for Title VII's purposes, "includes **_all_** aspects of religious observance and practice, as well as belief[.]"  42 U.S.C. § 2000e(j).

40.    As a Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

41.    Plaintiff holds sincere religious beliefs that (1) taking a COVID-19 vaccine would defile her body, which she considers to be a "temple of the Holy Spirit," because the vaccines contain substances that do not occur naturally in the human body or in the food people consume; (2) taking a COVID-19 would be a "betrayal of faith" in Jesus Christ; and (3) the OHA's Vaccine Mandate is a trial run for compelling people to accept the mark of the beast.  *See* Ex. "B."

42.    Plaintiff's bona fide religious beliefs conflicted with her employment-related duty to receive a COVID-19 vaccine.  *See* Ex. "B."

43.    Plaintiff informed her employer, Defendant OHSU, of the conflict between her religious beliefs and her employment-related duties.  *See* Ex. "B."

44.    Defendant OHSU subjected Plaintiff to discriminatory treatment by:

    a.  Declaring Plaintiff's beliefs unworthy of a religious exception;

    b.  Granting religious exceptions to employees who had religious beliefs different from Plaintiff's;

    c.  Placing Plaintiff on unpaid leave on or about October 18, 2021 [*see* Ex. "C"]; and

    d.  Firing her on December 2, 2021.  *See* Ex. "C."

45.    Defendant OHSU made no attempt to accommodate Plaintiff's bona fide religious belief, as Title VII requires.

46.    Defendant OHSU never made any assertion to Plaintiff that OHSU would incur undue hardship by accommodating Plaintiff's beliefs.

47.    Defendant OHSU could, and should, have easily accommodated Plaintiff's sincere religious beliefs by allowing Plaintiff to continue working remotely.  Because Plaintiff had already been working remotely for the duration of

the pandemic, there was no reason whatsoever why OHSU could not have allowed her to do so for the foreseeable future, if not on a permanent basis.

48.    The fact that Defendant OHSU provided religious accommodations to other employees is further proof of the availability of reasonable accommodations that would have enabled Plaintiff to keep working.

49.    OHSU offered no such accommodation to Plaintiff, opting to take adverse employment action against her instead.

50.    Animus toward Plaintiff's specific religious beliefs is truly what motivated Defendant OHSU to get rid of Plaintiff.

51.    Based on the foregoing, Defendant OHSU has unlawfully discriminated against Plaintiff in violation of Title VII.

<u>SECOND CAUSE OF ACTION:</u>
**Violation of Title VII – Religious Discrimination**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

52.    Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

53.    "To establish a prima facie case of religious discrimination, must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) *either* that similarly situated individuals outside her protected class were treated differently, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008) (emphasis in the original) (internal quotation marks omitted).

54.    As a Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

55.     Plaintiff was qualified for her position as a senior research assistant.

56.     Defendant OHSU subjected Plaintiff to multiple adverse employment actions – first by threatening to place her on unpaid leave and/or terminate her employment if she did not receive a COVID-19 vaccine, then by placing her on unpaid leave on or about October 18, 2021, and ultimately by firing her on December 2, 2021.  *See* Exs. "D"-"F."

57.     Defendant OHSU treated similarly situated individuals outside Plaintiff's protected class differently: Implicit in OHSU's statement to employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved" is that ***some*** exceptions would be approved.  *See* Ex. "A" [OHSU's declaration that "(n)arrow exceptions process will help keep OHSU and the community safe"].  The fact that OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – implies that only those individuals who held the right beliefs would receive accommodations.

58.     Furthermore, OHSU did provide religious accommodations to at least some of its employees.  *See* Ex. "E."

59.     At the very least, the facts that (1) OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – and (2) denied Plaintiff a religious exception because she had those beliefs are circumstances that give rise to an inference of religious discrimination.

60.     Based on the foregoing, Defendant OHSU has committed religious discrimination against Plaintiffs in violation of Title VII.

## THIRD CAUSE OF ACTION:
### Violation of Constitutionally Protected Freedom of Religion
### [U.S. Const. amend. I; 42 U.S.C. § 1983]
### Against DOES 1-50

61.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

62.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

63.    Under 42 U.S.C. § 1983, state actors like the VERC's members – whose identities have yet to be ascertained – forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights: "[A] state official who violates federal law '*is in that case stripped of his official or representative character and is subjected in his person to the consequences* of his individual conduct.'" *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (emphasis added).

64.    The Free Exercise Clause of the U.S. Constitution's First Amendment, made applicable to states via the Fourteenth Amendment, prohibits state governments from infringing on individuals' freedom of religion.  The Fourteenth Amendment prohibits state governments from depriving any person of liberty without due process of law.  U.S. Const. amend. XIV, § 1.

65.    "The Free Exercise Clause protects against government hostility that is masked as well as overt."  *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, the VERC's members – whose identities have yet to be ascertained – expressed overt hostility toward the religious beliefs of certain OHSU employees, including and especially Plaintiff, by declaring which religious beliefs were worthy of religious exceptions from Gov. Brown's Vaccine Mandate and which religious beliefs were not.

66.    Furthermore, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious

belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).

67.    Acting under color of state law, the VERC effectively declared that Plaintiff's beliefs were unworthy of an exception from the COVID-19 vaccination requirement.  In so doing, the VERC's overstepped their constitutional bounds, pressuring Plaintiff to conform to the prevailing approved religion.

68.    The Supreme Court has also consistently upheld the right of religious practitioners to abstain from supporting the abortion industry in any way.

69.    Acting under color of state law, the VERC's members effectively penalized Plaintiff for adhering to her sincere, religiously-based objection to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiff. The VERC's members forced Plaintiff to choose between the government-provided benefit of continued employment with OHSU and following her religious beliefs.  This, the U.S. Constitution prohibits.

70.    Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC's members could – and should – have reasonably accommodated Plaintiff's beliefs and let her keep working.  The actions of the VERC's actions in establishing and enforcing a discriminator religious exception were not narrowly tailored and cannot survive strict scrutiny under the First Amendment.

71.    Based on the foregoing, VERC's members, identified herein as DOES 1-50, have deprived Plaintiff of her constitutionally protected freedom of religion and should be held accountable accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

## ON ALL CAUSES OF ACTION:

1.    For declaratory and injunctive relief against the members of the VERC, as stated *supra*;

2.    For economic damages in an amount according to proof at trial;

3.    For non-economic damages in an amount according to proof at trial;

4.    For punitive damages in an amount according to proof at trial;

5.    For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.    For such other and further relief as the Court may deem proper.


Dated: October 19, 2023                    PACIFIC JUSTICE INSTITUTE
                                           __/s/ *RAY D. HACKE*_____
                                           Ray D. Hacke
                                           Attorneys for Plaintiff
                                           JENNIFER J. PETERS

# EXHIBIT "A"

**Exhibit 3**

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Connie Seeley <now@ohsu.edu> |
| **Sent:** | Thursday, September 30, 2021 6:13 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Sept. 30 update |

OHSU**NOW**

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ፡ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comúniquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*

 Share your experiences with the **Covington Hotline**

# Today's highlights

- **All OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18.** Today, we want to reiterate why this is so important and why we have narrow criteria for approving exception requests.
- **The more the merrier: Occupational Health can provide your COVID-19 booster.** No need to try OHSU pharmacies.
- **Automated Box content copy starts tomorrow, Oct. 1.** Do not access or use the From_Box folder in OneDrive until you are notified by ITG that the file migration is complete.
- **Are you experiencing compassion fatigue?** A powerful message from OHSU's Dr. George Keepers.
- **Only electronic badge requests accepted Oct. 4:** All requests must also be approved by a manager/OHSU sponsor.
- **Inbound FedEx shipments have been experiencing substantial delays due to national and worldwide labor shortages.** Please account for these delays when you place your orders.

# Narrow exceptions process will help keep OHSU and our community safe

As you know, all OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18. Across OHSU's more than 22,000 members, some of you have requested an exception for religious or medical reasons.

On Sept. 22, OHSU shared its narrow criteria for approving exception requests, and some of you have asked – why is this so narrow? OHSU has a responsibility to our members, our patients and our community to keep everyone as safe as possible. Vaccination against COVID-19 is an important tool in creating this safe environment.

There are valid reasons that a person may not be able to get vaccinated, but OHSU, and many of our peers, are using narrow criteria so we can ensure that the lens applied is truly a medical or religious one. In preliminary reviews, **OHSU's exception review panel expects that very few of the submitted requests for religious exceptions will be approved**.

This is in part because social, political or economic philosophies or personal preferences are not considered to be religious beliefs, and will not qualify a member for a religious exception. Examples of beliefs that do **not** qualify for a religious exception include:

- Arguments for free will or against compulsion.
  - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
  - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
  - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
  - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
  - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

The exception review panel is working through these requests now. However, each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness.

With the rigorous reviews, **it is unlikely that the committee will complete all the reviews by Saturday, Oct. 2**.

As you know, if you are not compliant with the policy by Oct. 18, you cannot work, study or volunteer at OHSU on Oct. 19.  Monday, Oct. 4, is the last day that you could get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18.

If you believe your request may not be approved based on these criteria, we are here to help. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. Remember to enter your vaccination record as soon as possible in Enterprise Health, as well. It may also be helpful to check that your Enterprise Health record is up-to-date, since OHSU is using that to determine compliance.

If you have questions about the vaccines, email AskOHSU@ohsu.edu, and we can connect you with someone who can answer your questions. You're also encouraged to join an open Q&A forum this Friday, Oct. 1, at 11 a.m.

# The more the merrier: Occupational Health can provide your COVID-19 booster

Occupational Health continues to have ample capacity for giving COVID-19 booster doses to employees and students. Read this OHSU Now post for all the details about making an appointment in Enterprise Health. If you only need the flu vaccine, you are still welcome to walk in on Wednesdays.

Please let our OHSU pharmacy colleagues focus on their work prioritizing patient care.

# Reminder: Box-to-OneDrive automated content copy starts tomorrow

Here's what you need to know:

- Your Box files and folders will be copied by ITG through a series of automated syncs. This process is **entirely automated** and will happen behind the scenes, allowing you to continue working in Box without interruption.
- Your files will begin to appear in a **From_Box folder in OneDrive** starting tomorrow and continuing through Dec. 31, 2021. Read the Sept. 23 OHSU Now post.
- Please **do not use the files in the From_Box folder** in OneDrive until you are notified by ITG that the migration is complete.

Keep working on your files in Box, take a File Management in the Cloud training and start exploring and learning OneDrive. Read the Box Migration FAQs to learn more.

# Are you experiencing compassion fatigue?

In a letter to the Department of Psychiatry on July 30, 2021, George Keepers, M.D., professor and chair of psychiatry, OHSU School of Medicine, wrote, "…There's another surge gaining strength by the day in the country, a surge of anger at the people who have refused to be vaccinated, who have denied the tragedy of this pandemic … ignored scientific experts, ignored the pleas of overworked, despairing health care professionals…."

As Dr. Keepers explains, this anger is symptomatic of compassion fatigue, which can be a normal consequence of working in a helping field. Health care providers and those in professions based on service are particularly vulnerable to compassion fatigue – a reality made precipitously worse by the pandemic.

# EXHIBIT "B"



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name: Jennifer Peters

Mailing Address: 15530 SW Applewood Lane

City: Tigard          State: Oregon          Zip Code: 97224

Preferred Pronoun(s): She/Her          Preferred Phone: 503-701-8812

Preferred Email: pjennife@ohsu.edu          Preferred Method of Contact: email

Employee/Student ID #: 68959          Job Title: Performance Improvement Consultant

Manager/Supervisor: Irene Barhyte

Department: Knight Cancer Institute

## Part B:   Religious Exception Request

Name of Religion: My Savior is the Lord Jesus Christ.  My faith is based on Jesus and the Bible's scriptural teachings. Non-denominational Christianity would be the closest "religion".

  X     Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

I cannot in good conscience, inject this substance into my body as it violates my religious beliefs and convictions.

> *Indeed, all who desire to live a godly life in Christ Jesus will be persecuted, while evil people and impostors will go on from bad to worse, deceiving and being deceived. But as for you, continue in what you have learned and have firmly believed, knowing from whom you learned it and how from childhood you have been acquainted with the sacred writings, which are able to make you wise for salvation through faith in Christ Jesus. All Scripture is breathed out by God and profitable for teaching, for reproof, for correction, and for training in righteousness, that the man of God may be complete, equipped for every good work. 2 Timothy 3:12-17 ESV*

This vaccine is an act of interfering with divine providence and contradicts my sincere religious beliefs. Christ, Jesus is my ultimate healing power and acceptance of vaccines on a healthy body as a betrayal of faith. Jesus spoke of seeking out the help of a physician only when you are sick, not when you are well.

> *I appeal to you therefore, brothers, by the mercies of God, to present your bodies as a living sacrifice, holy and acceptable to God, which is your spiritual worship. Do not be conformed to this world, but be transformed by the renewal of your mind, that by testing you may discern what is the will of God, what is good and acceptable and perfect. Romans 12:1-2 ESV*

1 Corinthians  3:16-17,6:19-20 and 10:31 remind us that we are to regard our bodies a temples of God's Holy Spirit and that we are to honor God, our Creator and possessor of our very bodies by not defiling them. I strongly believe that any vaccine that contains DNA cells, proteins, metals, and other substances



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

that do not occur in our bodies naturally or in the foods we consume, defiles the temple of God. I believe it is imperative to treat our bodies as holy temples of the very Spirit of God.

*16 Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst? 17 If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple. 1 Corinthians 3:16-17*

*19 Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; 20 you were bought at a price. Therefore honor God with your bodies. 1 Corinthians 6:19-20*

*31 So whether you eat or drink or whatever you do, do it all for the glory of God. 1 Corinthians 10:31*

The "mark of the beast", mentioned in the Bible in Revelation 13:15-17, serves as a warning to Christians to not align with worldly things that are antagonistic to God. The Scriptures say that the mark will be forced on all people, "small and great," and no one will be able to sell or buy unless marked with the number of God's enemy.

Notice the Bible says, "*No man might buy or sell, save he that had the mark*". In many places, now, you cannot go into a store, a restaurant, or any place of business, or even to work, unless you are wearing a mask. You cannot run a business unless you enforce the mask. You must submit to these rules if you want to buy or sell. The "freedom pass" is the next step, in that it not only covers the same restrictions, but actually identifies you personally.

After consideration and prayer, I cannot take this vaccine, as it goes against my personal beliefs.

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

In the past, I have declined certain medical care, and will continue to do so based on my beliefs as I have outlined a few of the reasons above.

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional: Walt Griffiths

Title: Ordained Minister

Represented Organization: Reality Ministries

Street Address: 3440 NW Covey Run Rd.

City:     Corvallis          State:   OR               Zip Code: 97330

Telephone:          503.701.8811                Email: waltgx@comcast.net

How long have you had a relationship with the recognized religious professional?: 10 Years



# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

*Jennifer J. Peters*
Signature

### Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand that COVID-19 has caused a pandemic that continues to sicken and kill many people.
- I understand if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member**: *Jennifer J. Peters*    **Date:** ___9/6/21___

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

# EXHIBIT "C"

↩ Reply ⌄    🗑 Delete    🚫 Junk    Block    ⋯

# FW: Your religious exception request was not approved

JP    **Jennifer Peters**    ↩ ↩↩ → ⋯
       Mon 10/4/2021 8:50 AM
       To: You

**From:** Vaccine Exception Review Committee <now@ohsu.edu>
**Sent:** Friday, October 1, 2021 6:00 PM
**To:** Jennifer Peters <pjennife@ohsu.edu>
**Subject:** Your religious exception request was not approved



Dear Jennifer ,

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are **not approved for a religious exception**. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria established under the law to determine if your request met the legal definition of a religious or medical exception.

The vast majority of these denials were because the requestor did not meet the long-established legal requirements for any religious exception, but instead stated personal beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply

# EXHIBIT "D"



# COVID-19 Vaccine Policy Accommodation Requirements

Starting October 19, 2021, OHSU members who have an approved exception and accommodation will need to adhere to testing and PPE requirements.

**What are the PPE requirements?**

If you have an approved exception, and work in an OHSU building, you currently will need to:

- Wear an approved and fit-tested respirator or the N95 or equivalent at all times, except when actively eating/drinking, in accordance with OHA requirements.
- Maintain physical distancing from others when indoors in a clinical area
- Maintain at least 6-feet distance when actively eating/drinking and mask is removed.
- Wear a mask outdoors when 6-feet distance from others cannot be maintained.

**What is the testing requirement?**
To remain in compliance, you should **complete twice-weekly COVID testing** by getting one test between **Monday-Wednesday** (inclusive) and another test between **Thursday-Saturday** (inclusive) each week, with at least a 48-hr. interval between both tests.

**Who does this apply to?**
Unvaccinated OHSU members who have an approved exception and accommodation as determined by the Vaccine Exception Review Committee.

**Where do I go for testing?**
Location: Drive-Through COVID Testing: 3405 SW Perimeter Court, 97239
Hours: Monday-Saturday: 7:30am- 3:00pm
No appointments required.

**Can I get tested elsewhere?**
Yes. Documentation of negative PCR-based COVID–19 testing from an alternative testing location is also acceptable. Please submit test results to occhealth@ohsu.edu for employees, with the subject: Accommodation Testing Result. Home-based testing is not acceptable

**Which test will be performed?**
Nasal swab Rapid PCR test

**What is the turnaround time for these tests to result?**
Same day, by end of business day. Results will be emailed to your preferred email address.

**Can I report to work while tests are pending?**
Only if you are asymptomatic.

**What if I have symptoms?**
Follow the Illness Exclusion and Return-to-Work Criteria before reporting to work.



# COVID-19 Vaccine Policy Accommodation Requirements

If you have symptoms of a viral illness and a negative test for COVID-19, you may come to work if:

- It has been at least 48 hrs from symptom onset AND
- It has been at least 24 hrs since your last fever without use of fever reducing meds AND
- Symptoms have significantly improved.

**Do I have to pay for these tests?**
No. Testing done through Occupational Health's drive thru test site is free to OHSU members.

**What if I test negative?**
You may report to work. No further action is required. Continue to practice infection control measures and continue to maintain your testing cadence.

**What if I test positive?**
You will be notified by Occupational Health or Student Health by phone and email. Do not report to work and isolate immediately. You will not be asked to retest for 90 days from your positive test. The CDC does not recommend retesting within 90 days because reinfection is uncommon during this period and a positive PCR test without new symptoms more likely represents persistent shedding of viral RNA, rather than an active infection.

**What if my result is inconclusive?**
On the rare occasion that you receive an "inconclusive" result, you will need to repeat the test immediately.

**Can the twice weekly testing be done on paid time?**
Yes. Most testing will be available during regular work hours. If you do not work at an OHSU facility with access to Occupational Health services, you will be allowed a reasonable amount of paid time to be tested outside of OHSU.  Any paid time for testing must be approved by your supervisor.

**Am I required to get tested if I telework?**
If you need to be onsite at an OHSU facility for any reason, you must be tested prior to arriving. If your job requires you to regularly work onsite, even just one day a week, you will be required to follow the same twice weekly testing schedule as fully onsite employees.

**What happens if I don't comply with the testing requirements?**
Failure to follow the accommodation will result in being placed on unpaid leave at a minimum, and may result in termination of employment.

**How long will the twice weekly testing requirement apply?**
The testing requirement is part of the accommodations framework for unvaccinated individuals.  This framework will evolve over time as new information emerges.  The duration of the testing requirement is currently indefinite and will be updated as new information and new recommendations become available.

# EXHIBIT "E"



**OHSU**

Oct. 20, 2021

Peters, Jennifer J
15530 SW Applewood Ln
Tigard, OR 97224-1843

177 T1 P1

Human Resources

hrcomm@ohsu.edu

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

**Re: Important notice about your employment**

This letter serves as final notification that you are on unpaid leave from your OHSU position effective Oct. 19, 2021 due to non-compliance with OHSU Policy 03-30-150 COVID-19 Immunizations and Education.

You will remain on unpaid leave for up to 45 days. If you become fully vaccinated within the 45 days, you may return to your position once you provide OHSU with documentation of your COVID-19 vaccination.

If you remain non-compliant with the policy after 45 days (Dec. 2, 2021), you will be deemed to have resigned and your employment with OHSU will end.

The enclosed FAQ provides additional information regarding OHSU network access, benefits and returning to work.

OHSU values the contributions you have made to OHSU and those we serve. We regret the loss of any OHSU member as a result of the vaccine policy. While we acknowledge each individual's right to their opinion and choice about vaccination, we hope you understand OHSU's firm position that vaccinations are the key to ending this devastating pandemic and protecting our community.

Employee ID#: 68959

Enclosure: Frequently Asked Questions



Dec. 3, 2021

Human Resources

hrcomm@ohsu.edu

Peters, Jennifer J
15530 SW Applewood Ln
Tigard, OR 97224-1843

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

**Re: Final notice about your employment**

This letter serves as final notice that your employment with OHSU has been
terminated effective Dec. 2, 2021, due to non-compliance with OHSU Policy
03-30-150 COVID-19 Immunizations and Education.

A final paycheck will be sent in a separate mailing to this address. If your
net pay is zero, it's because applicable deductions offset your earnings;
however, the gross earnings will be reported on your W-2 form.

If you had active benefits coverage in November, your coverage will
continue through Dec. 31, 2021. Within 45 days following termination of
your benefits, you will be sent an information packet about the option to
continue benefits through COBRA.

Please work with your former supervisor to arrange the return of any
OHSU equipment, keys, and your ID badge as soon as possible, if necessary.

Thank you for your service to OHSU and the people of Oregon. We regret
losing you as an OHSU member, and wish you the very best in your future
endeavors.

OHSU Human Resources


Employee ID#: 68959

# EXHIBIT "F"

**U.S. Department of Justice**

Civil Rights Division

KC:MLB:KLF
DJ 170-82-0

*Employment Litigation Section -4CON*
*150 M Street, N.E., Room 9.514*
*Washington, DC  20530*
*www.usdoj.gov/crt/emp*

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL                                           July 28, 2023

Ms. Jennifer Peters
15530 SW Applewood Lane
Tigard, OR  97224

                Re:     Jennifer Peters v. Oregon Health & Science
                        Univ., EEOC Charge No. 551-2022-02187

Dear Ms. Peters:

        It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC).  This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

        You are hereby notified that conciliation in this matter was unsuccessful by the EEOC.  You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent.  If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

        Therefore, you should consult an attorney of your own choosing at your earliest convenience.  If you are unable to locate an attorney, you may wish to contact the EEOC, or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of Title VII, 41 U.S.C. 2000e-5(f)(1).

        The files in this matter are located at the EEOC's Seattle Field Office.  If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please feel free to address your inquiry to: Elizabeth M. Cannon, Director, EEOC, 909 First Avenue, Suite 400, Seattle, WA 98104-1061.

                        Sincerely,

                        Kristen Clarke
                        Assistant Attorney General
                        Civil Rights Division

                By:     *Meredith L. Burrell*

                        Meredith L. Burrell
                        Principal Deputy Chief
                        Employment Litigation Section

cc:     Oregon Health & Science Univ., c/o Emily Shults, Esquire
        EEOC, Seattle Field Office

# EXHIBIT "G"